UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROBERTA K. RANEY,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

Case No. C11-5438-RAJ-BAT

**REPORT AND RECOMMENDATION**

Roberta K. Raney seeks review of the denial of her Supplemental Security Income and Disability Insurance Benefits applications. She contends that the ALJ erred by (1) improperly evaluating the medical evidence; (2) finding Ms. Raney not fully credible; (3) improperly assessing Ms. Raney's residual functional capacity ("RFC"); and (4) finding Ms. Raney not disabled at step five. Dkt. 24 at 2. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings.

## I.    FACTUAL AND PROCEDURAL HISTORY

Roberta Raney is currently 53 years old, has completed the eighth grade, and has worked as a cook, housekeeper, and waitress.[1] On June 18, 2007, she applied for benefits, alleging disability as of May 18, 2002; she later amended her alleged onset date to February 1, 2007. Tr.

---

[1] Tr. 120, 174, 179.

REPORT AND RECOMMENDATION - 1

39, 120, 127. Her applications were denied initially and on reconsideration.[2] The ALJ conducted a hearing on April 7, 2010, and issued a decision on May 27, 2010, finding Ms. Raney not disabled. Tr. 14-34. As the Appeals Council denied Ms. Raney's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1-7.

## II. THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[3] the ALJ made the following findings:

> **Step one:** Ms. Raney had not engaged in substantial gainful activity since February 1, 2007.
>
> **Step two:** Ms. Raney had the following severe impairments: cannabis abuse, post traumatic stress disorder in partial remission, major depressive disorder, rule out personality disorder, and bipolar disorder, provisional.
>
> **Step three:** These impairments did not meet or equal the requirements of a listed impairment.[4]
>
> **Residual Functional Capacity:** Ms. Raney had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: She can perform only simple, repetitive tasks. She can have only limited interaction with supervisors and co-workers. She cannot perform work requiring coordination with others.
>
> **Step four:** Ms. Raney could not perform her past work.
>
> **Step five:** As there exists a significant number of jobs Ms. Raney can perform, she is not disabled.

Tr. 14-29.

## III. DISCUSSION

**A.  The medical evidence**

Ms. Raney first argues that the ALJ erred in evaluating the opinions of examining

---

[2] Tr. 77, 83, 85.
[3] 20 C.F.R. §§ 404.1520, 416.920.
[4] 20 C.F.R. Part 404, Subpart P. Appendix 1.

psychologist Norma Brown, Ph.D., and treating doctors Karin Barkin, M.D., Karl Baer, M.D., and William Cagle, M.D., as well as the medical records from Kitsap Mental Health.

In general, more weight should be given to the opinion of a treating doctor than to a non-treating doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another doctor, a treating or examining doctor's opinion may be rejected only for "clear and convincing reasons." *Id.* at 830-31. Where contradicted, a treating or examining doctor's opinion may not be rejected without "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). An ALJ does this by setting out a detailed and thorough summary of the facts and conflicting evidence, stating her interpretation of the facts and evidence, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ must do more than offer her conclusions; she must also explain why her interpretation, rather than the treating doctor's interpretation, is correct. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

*1.     Dr. Brown*

Norma Brown, Ph.D., evaluated Ms. Raney four times for the state Department of Social and Health Services ("DSHS"). In June 2007, Dr. Brown diagnosed cognitive disorder NOS (traumatic brain injury), post-traumatic stress disorder ("PTSD"), and major depression, recurrent, moderate. She opined that Ms. Raney had moderate and marked limitations in cognitive and social factors and a severe limitation in her ability to respond appropriately to and tolerate the pressure and expectations of a normal work setting. She noted Ms. Raney's reports of memory and social impairments due to a 2002 motor vehicle accident. Tr. 445-48.

REPORT AND RECOMMENDATION - 3

In April 2008, Dr. Brown diagnosed cognitive disorder NOS, PTSD, and major depression, recurrent, with psychotic features. She opined that Ms. Raney had moderate to severe limitations in cognitive and social factors. She further opined that Ms. Raney had "generally good cognitive skills" and her mental status exam was within normal limits. She found no evidence of malingering. Tr. 531-34.

In February 2009, Dr. Brown diagnosed PTSD, major depressive disorder, recurrent, moderate, and cannabis abuse. She noted that Ms. Raney reported smoking pot a few times a month. She opined that Ms. Raney had no cognitive limitations and "good cognitive skills," and moderate to severe limitations in social factors. Tr. 551-54.

In January 2010, Dr. Brown diagnosed cannabis abuse, PTSD, and major depressive disorder, recurrent, moderate. She noted Ms. Raney reported daily use of marijuana when she could get it from friends and opined "Her marijuana use likely affects her motivation to work and creates a lack of interest in doing things. She also complains re: lack of focus which could be caused also by her marijuana use." She opined that Ms. Raney had no cognitive limitations and "good cognitive skills overall," and mild to marked limitations in social factors. She noted Ms. Raney reported that "she is much improved from when she first applied for benefits at DSHS." Tr. 564-71.

The ALJ gave little weight to these opinions. The ALJ found that Dr. Brown's 2007 and 2008 opinions of moderate to marked cognitive limitations were not supported by her finding that Ms. Raney's mental status exam was within normal limits. The ALJ also found that Dr. Brown did not acknowledge Ms. Raney's drug use in her 2007 or 2008 evaluations, but when she did acknowledge it in her 2010 evaluation, she opined that Ms. Raney's drug use affected her motivation to work. The ALJ also noted that Dr. Brown opined in 2009 and 2010 that Ms.

Raney had no cognitive limitations despite substance abuse. Finally, the ALJ found that Dr. Brown performed her evaluations for the purpose of determining Ms. Raney's eligibility for state benefits, the evaluations were based largely on Ms. Raney's subjective reports, and Ms. Raney had incentive to overstate her symptoms, all of which undermined the reliability of Dr. Brown's opinions. Tr. 27.

A discrepancy between a doctor's statement assessing a patient's limitations and the doctor's clinical notes, recorded observations, and other opinions is a clear and convincing reason for not relying on the doctor's statement. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The ALJ thus properly considered the fact that in 2007 and 2008 Dr. Brown assessed moderate to marked cognitive limitations but at the same time stated that Ms. Raney had good cognitive skills and performed within normal limits on mental status exam. This discrepancy undermines these opinions.

The extent to which a doctor is familiar with other information in a claimant's case record is a relevant factor in deciding the weight to give to a medical opinion. 20 C.F.R. § 404.1527(d)(6). Thus, to the extent Dr. Brown was unfamiliar with Ms. Raney's drug use at the time of her 2007 and 2008 evaluations, this was a valid consideration in giving little weight to these opinions, particularly given Dr. Brown's later opinion that Ms. Raney's drug use affected her motivation to work.

The purpose for which an evaluation is obtained is not a legitimate reason to reject it. *Lester*, 81 F.3d at 832. Thus, the fact that Dr. Brown conducted her evaluations for the purpose of determining Ms. Raney's eligibility for state benefits was not a legitimate reason to give her opinions less weight. Moreover, while the ALJ may discount a medical opinion that is based on the complaints of a discredited claimant, she may not reject an opinion where the doctor did not

disbelieve the claimant, and where the doctor relied on her own clinical observations and professional judgment in reaching an opinion. *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1999-2000 (9th Cir. 2008). Dr. Brown did not express disbelief in Ms. Raney's statements. To the contrary, in her 2008 evaluation, Dr. Brown administered the Rey 15 Factor Test and found no evidence of malingering. Tr. 531. And while Dr. Brown did take an extensive history from Ms. Raney as part of her evaluations, Dr. Brown did not merely repeat what Ms. Raney told her. Rather, she conducted her own clinical evaluations and relied on her professional judgment in forming her opinions. The circumstances of the evaluations were thus not a specific and legitimate reason to give Dr. Brown's opinions little weight.

The ALJ provided specific and legitimate reasons for rejecting Dr. Brown's 2007 and 2008 opinions. But the sole reason the ALJ gave that applied to the 2009 and 2010 opinions was not a valid one. Where an ALJ fails to provide adequate reasons for rejecting a treating physician's opinion, the Court may credit that opinion as a matter of law. *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). However, courts retain flexibility in applying the credit as true theory. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003). Where it is not clear from the record that the ALJ would be required to award benefits if the evidence is accepted were credited, the Court may remand for further determinations. *Id.* The Court finds that it is not clear from the record that the ALJ would be required to find Ms. Raney disabled on the basis of Dr. Brown's 2009 and 2010 opinions. This case should thus be remanded for further administrative proceedings.

      *2.    Dr. Barkin, Dr. Baer, and Dr. Cagle*

Psychiatrists Dr. Barkin, Dr. Baer, and Dr. Cagle treated Ms. Raney at Kitsap Mental Health, where Ms. Raney began receiving treatment in July 2007 and continued through at least

January 2010, three months before the ALJ hearing. These doctors conducted an initial psychiatric evaluation and periodic assessments for medication management. The doctors gave psychiatric diagnoses, conducted mental status exams, listed current medications, and formulated a plan for changes in treatment. Tr. 493-530, 623-84.

The ALJ discussed these doctors' treatment notes in evaluating Ms. Raney's credibility. In finding that the objective evidence did not fully support Ms. Raney's subjective complaints, the ALJ noted that Dr. Cagle reported normal mental status examinations during visits between May 2008 and February 2009. Tr. 24. In finding that the evidence suggested Ms. Raney's symptoms were largely situational and decreased with changed circumstances and medication, the ALJ discussed various treatment notes from the doctors, including notes about Ms. Raney's improvement after separating from an abusive spouse and notes about her improvement with medication and deterioration when not taking her medication. Tr. 25. The ALJ did not further address these doctors' treatment notes.

Ms. Raney argues that the ALJ erred by discussing only treatment notes that showed improved functioning, while failing to discuss treatment notes finding impaired mood, affect, and functioning. Dkt. 24 at 10. She points to treatment notes where the doctors found depressed mood, impaired impulse control, panic attacks, ruminations about her brother's death, and disrupted sleep. *Id.* She argues that the ALJ erred by "failing to give proper deference to the opinions" of these doctors. *Id.*

An ALJ must explain why "significant, probative evidence has been rejected," and must explain why uncontroverted medical evidence is rejected. *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). However, while the ALJ must "make fairly detailed findings in support of administrative decisions to permit courts to review those decisions intelligently," the ALJ "need

not discuss all evidence presented." *Id.* at 1394-95. Where there are conflicts in the evidence, it is the ALJ's job to resolve them. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

Although Ms. Raney frames her argument as one where the ALJ has rejected the opinions of treating doctors without explanation, the situation instead is one where the treating doctors documented the course of their treatment, but did not opine as to Ms. Raney's functional abilities or limitations. There were thus no "opinions" to accept or reject.

The ALJ discussed the doctors' treatment notes as part of her analysis of Ms. Raney's credibility, finding that the notes did not support Ms. Raney's subjective complaints. The ALJ is not obliged to comment on each and every treatment note made by these doctors over the course of more than three years, nor would this even be possible. Rather, the ALJ discussed those treatment notes relevant to her credibility analysis. Where there are notes that contradict Ms. Raney's assertions, the ALJ does not err by commenting on the contradiction. Although Ms. Raney would prefer an alternative analysis of the doctors' treatment notes, where, as here, the ALJ's interpretation is rational, the Court must uphold it. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The ALJ did not err in evaluating these doctors' treatment notes.

*3.     Other records from Kitsap Mental Health*

Ms. Raney received treatment from other providers at Kitsap Mental Health, including Edie Stone, M.S.W., Sylvia Staten, B.S., M.A., and Colleen Zupancic, B.A., R.C. The ALJ again discussed the treatment notes of these providers in evaluating Ms. Raney's credibility. The ALJ noted Ms. Raney's explanations to Ms. Zupancic for missed appointments; her reports to Ms. Staten about improvements in her condition with use of medication and changes in her circumstances; and her reports to Ms. Staten about her daily activities. Tr. 25-26.

Ms. Raney again argues that the ALJ erred by failing to fully consider all the treatment

notes from these providers and instead focusing solely on those notes that show improvement. Dkt. 24 at 15. She lists treatment notes where the providers found depressed mood, reports of outbursts of anger and panic attacks, poor memory, and situational difficulties including housing and relationship problems, as well as treatment notes showing improvement with medication and changed circumstances, Ms. Raney presenting as relaxed and calm, and Ms. Raney reporting doing much better. Dkt. 24 at 11-15.

Lay testimony as to a claimant's symptoms is competent evidence that the ALJ must take into account, unless the ALJ expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). But, as with the doctors' notes, this requirement does not mean the ALJ must recount each and every treatment note made by Ms. Raney's counselors. Again, while the ALJ must make detailed findings in support of her decision, she need not discuss all evidence presented. *Vincent*, 739 F.2d at 1395. The treatment notes Ms. Raney lists illustrate this very point. Ms. Raney takes five pages of her brief to list treatment notes spanning the course of three and a half years, some of which show improvement and some of which do not. It is the ALJ's job to synthesize and summarize the medical evidence, not to recount it verbatim. This task will inevitably leave certain individual notes out of the decision entirely. But this does not mean the ALJ erred by not commenting on a particular note Ms. Raney would have her discuss.

As with the doctors at Kitsap Mental Health, these providers documented the course of their treatment of Ms. Raney, but did not opine as to her functional limitations. There were thus no "opinions" from these providers to accept or reject. Rather, the ALJ discussed these providers' treatment notes as part of her credibility analysis, giving examples from the treatment notes to support her findings. That there was another possible interpretation of the treatment

notes does not make the ALJ's findings erroneous. *Thomas*, 278 F.3d at 954. The ALJ did not err in evaluating these providers' treatment notes.

**B.     Credibility**

Ms. Raney next argues that the ALJ erred by finding her not fully credible. Dkt. 24 at 16. The ALJ did not find that Ms. Raney was malingering. Thus, the ALJ was required to provide clear and convincing reasons to reject her testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). An ALJ does this by making specific findings supported by substantial evidence. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ gave several reasons for finding Ms. Raney not fully credible. First, the ALJ found that objective findings and independent testing did not support the severity of Ms. Raney's longitudinal complaints. The ALJ noted that Dr. Brown and Dr. Cagle had normal findings on mental status examinations, and although Ms. Raney endorsed symptoms of traumatic brain injury in the June 2007 assessment with Dr. Brown, she performed normally on the trail-making tests conducted by Leslie Postovoit, Ph.D. Tr. 24. Although lack of objective medical evidence cannot be the sole reason an ALJ discounts subjective complaints, it is a relevant factor that the ALJ can consider in his credibility analysis. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Because the ALJ considered other reasons to discount Ms. Raney's credibility, it was not error for her to consider this one. And, again, although Ms. Potts may disagree with the ALJ's interpretation of the objective evidence, because the ALJ's interpretation is rational, the Court must uphold it. *Thomas*, 278 F.3d at 954.

Second, the ALJ found that Ms. Raney's history of limited treatment, cancelled appointments, and noncompliance with medication show that her symptoms are not sufficiently

severe to require sustained treatment. Tr. 25. Unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment is a clear and convincing reason to question a claimant's credibility. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). But the ALJ may not draw inferences from a claimant's failure to seek treatment without first considering any explanations the claimant may provide or other information in the case record that may explain this failure. SSR 96-7p. This is particularly true in the case of mental impairments, because a person suffering from a mental illness may not realize that she needs medication, or even that her "condition reflects a potentially serious mental illness." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). For this reason, it is "a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" *Id.* (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)). Moreover, a claimant's failure to seek treatment during a time when she had no medical insurance cannot support an adverse credibility determination. *Orn*, 495 F.3d at 638.

      The ALJ noted that Ms. Raney did not begin receiving mental health treatment until five months after her alleged onset date. Tr. 25. The ALJ also noted that at the time she began treatment at Kitsap Mental Health, Ms. Raney no longer took a psychiatric medication that had been helpful to her in the past. *Id.* Ms. Raney's alleged onset date is February 1, 2007, around the time her brother was murdered and when she alleges "the problems really accelerated." Tr. 689. She underwent her first DSHS evaluation four months later, in June 2007. Tr. 445. And she began her treatment at Kitsap Mental Health the following month, on referral from DSHS. Tr. 523. The ALJ failed to consider whether Ms. Raney had medical insurance or other means of paying for treatment during the five months between her alleged onset date and the time she started treatment. As her DSHS benefits covered her mental health treatment, it appears that she

did not have coverage before these benefits started, which would not have happened until after her initial evaluation. Her failure to seek treatment during this time thus cannot be a valid reason to question her credibility.

The ALJ also noted that Ms. Raney missed numerous appointments, including one period where she did not attend appointments for two months. Tr. 25. But the ALJ fails to note that, when questioned about the reasons for her missed appointments, Ms. Raney often reported that she was either homelessness or about to lose her housing, had no transportation, and had no telephone and was relying on others to relay phone messages to her. *E.g.*, 655. The ALJ failed to consider this or any other possible explanations for her missed appointments. As for her two-month absence from treatment, the ALJ found that that Ms. Raney characterized this as a "vacation." Tr. 25. But Ms. Raney's therapist reported that she described it as needing to "take a vacation from everything," and said "I needed to get my head back on straight so I just left and hid out." Tr. 684. Although Ms. Raney used the word "vacation," she did not use it in the sense of a holiday taken for pleasure. Rather, it appears she was describing withdrawing from treatment at a time when she felt overwhelmed. The ALJ thus appears to have faulted Ms. Raney for exercising poor judgment in seeking treatment for her mental impairments. This is not a valid reason for questioning her credibility.

Third, the ALJ found that the evidence suggested that Ms. Raney's symptoms were situational and her limitations decreased with changed circumstances and medication. Tr. 25. The ALJ noted Ms. Raney's reports to her doctors of improvement after separating from an abusive spouse, including her statement that she "believes that her husband's behaviors and life stresses have been the main impact on her moods." Tr. 25, 678. The ALJ also noted Ms. Raney's reports that her medication was working well and helping her moods, and her report of

labile moods when she ran out of her medication in February 2009.  Tr. 25.

Ms. Raney argues that the ALJ cited only to evidence showing improvement and ignored evidence to the contrary.  Dkt. 24 at 18.  But the evidence the ALJ cites is part of the "ordinary techniques of credibility evaluation" the ALJ may use.  *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996).  The evidence the ALJ identifies evidence that shows inconsistencies between Ms. Raney's claimed symptoms and her statements to her doctors.  These statements provide ample evidence to support the ALJ's finding, even if there is another possible interpretation of the evidence.  The ALJ properly considered the effect of the evidence of improvement with changed circumstances and medication use on Ms. Raney's credibility.

Fourth, the ALJ found that Ms. Raney's activities of daily living are not limited to the extent one would expect given her complaints of disabling symptoms and limitations.  Tr. 26.  The ALJ noted Ms. Raney's reports that she was helping to fix and clean a friend's house, that she cooks meals, does housework and laundry, that she attends "jams" where music is played but spends much of the time sitting in her car, and that on a typical day she "gets up when she wants to and does what she wants to." *Id.*

Daily activities that are transferrable to a work setting may be grounds for an adverse credibility finding.  *Fair*, 885 F.2d at 603.  But daily activities that do not contradict a claimant's other testimony or meet the threshold for transferrable work skills cannot form the basis of an adverse credibility determination.  *Orn*, 495 F.3d at 639.  The activities the ALJ describes are drawn directly from Ms. Raney's testimony.  *E.g.*, Tr. 728-29.  The ALJ identifies no contradiction between her testimony and her other statements about her daily activities.  And the activities the ALJ describes do not meet the threshold for transferrable work skills.  The "mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car,

REPORT AND RECOMMENDATION - 13

or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan*, 260 F.3d at 1050 (quoting *Fair*, 885 F.2d at 603). The kinds of limited daily activities Ms. Raney describes are not a clear and convincing reason to find her not fully credible.

Fifth, the ALJ found that to the extent Ms. Raney has functional limitations, they have been exacerbated by her substance use. Tr. 26. The ALJ noted that Ms. Raney blamed drinking for an altercation she got in with another woman, she reported in August 2008 that she was doing well with anger control in sobriety, and Dr. Brown opined that Ms. Raney's marijuana use likely affected her motivation to work, created a lack of interest in doing things, and caused a lack of focus. *Id.*

The ALJ's consideration of Ms. Raney's substance use is problematic. When substance use is present, the ALJ must follow a specific analysis to determine whether the substance use is a contributing factor material to the determination of disability. *See* 20 C.F.R. § 416.935. First, the ALJ must complete the five-step analysis without separating out the effects of drug or alcohol abuse. *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). If the ALJ finds the claimant is not disabled, the analysis ends. But if the ALJ finds the claimant disabled and there is medical evidence of drug or alcohol abuse, the ALJ must then determine if the claimant would still be disabled if she stopped using alcohol or drugs. *Id.*

Here, it is unclear just how the ALJ considered Ms. Raney's substance use. Because there was medical evidence of substance use, the ALJ was required to include the effects of substance abuse when performing the five-step analysis. Thus, to the extent Ms. Raney's substance use exacerbated her functional limitations, the extent of this effect is not relevant at this stage. But the ALJ appeared to have separated out the effects of Ms. Raney's substance use,

REPORT AND RECOMMENDATION - 14

finding that it lessened her credibility and exacerbated her functional limitations. Any such separation at this stage was erroneous. Moreover, the ALJ does not explain in what manner Ms. Raney's substance use affected her credibility. The ALJ's consideration of Ms. Raney's substance abuse does not comport with Social Security regulations and the law of this Circuit and was in error. If the ALJ wishes to consider the effect of Ms. Raney's substance abuse on her functional abilities, the proper means of doing so is in the context of a complete drug and alcohol abuse analysis under § 416.935 and *Bustamante*.

Sixth, and finally, the ALJ found that Ms. Raney's poor work history suggested that her current unemployment was related to lifestyle choices such as child-rearing and family responsibilities, or secondary gain motivation. The ALJ found that Ms. Raney had sporadic earnings before her alleged onset date, with no earnings in 10 of those years and earnings at the substantial gainful activity level in only 2 years. Tr. 26. The ALJ also found that Ms. Raney has "largely subsisted on public assistance," noting that she reported in August 2007 that she received state benefits. *Id.* Poor work history may constitute a valid basis for discounting a claimant's credibility. *See Thomas*, 278 F.3d at 959. But the fact that Ms. Raney was receiving state benefits during her alleged disability period has no bearing on her credibility. Indeed, Ms. Raney alleges she was entitled to federal benefits during the same period, the very issue in this case. Although the ALJ was entitled to consider Ms. Raney's poor work history, her consideration of Ms. Raney's receipt of state benefits was not a valid reason to question her credibility.

Overall, the ALJ considered some valid reasons and some invalid reasons for finding Ms. Raney not fully credible. An ALJ's use of an invalid reason to support his adverse credibility finding may be harmless if, despite the error, there remains substantial evidence to support the

REPORT AND RECOMMENDATION - 15

ALJ's conclusion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004). But the Court cannot say with confidence that is the case here, where the ALJ considered more invalid reasons than valid ones. This is particularly true given the apparently erroneous consideration of Ms. Raney's substance use, as well as the erroneous assessment of Dr. Brown's 2009 and 2010 opinions, which undermines the ALJ's assessment of the medical evidence. The Court finds that the ALJ's credibility assessment is not supported by substantial evidence and should not stand.

### C. Residual functional capacity and step five finding

Ms. Raney argues that the ALJ erred in several ways in assessing her residual functional capacity. Ms. Raney first asserts that the ALJ erred by not including all the limitations opined by Dr. Brown and described by Ms. Raney. Dkt. 24 at 21. Because the ALJ erred in assessing Dr. Brown's 2009 and 2010 opinions, and because the ALJ's assessment of Ms. Raney's credibility is not supported by substantial evidence, the Court agrees. A reevaluation of this evidence will necessitate a reevaluation of Ms. Raney's residual functional capacity and, consequently, the remainder of the sequential evaluation process.

Ms. Raney next argues that the ALJ erred by failing to include the limitations opined by the state agency reviewing doctor that she should avoid concentrated exposure to fumes, dust, and smoke due to her history of allergies. Dkt. 24 at 21; Tr. 483, 486. Although the ALJ did not find allergies to be a severe impairment, in assessing a claimant's residual functional capacity, the ALJ must consider limitations caused by all of a claimant's medically determinable impairments, including those that are not severe. 20 C.F.R. § 416.945(a)(2). In addition, the ALJ must consider all opinion evidence, including from non-examining sources, and explain the weight given to the opinions. 20 C.F.R. § 416.927(f)(2). The ALJ erred by failing to comment

on this opinion and either incorporating it into her residual functional capacity assessment or giving valid reasons for rejecting it.[5]

Finally, Ms. Raney argues that although the ALJ stated she gave great weight to the opinion of Leslie Postovoit, Ph.D., the ALJ did not in fact include the limitations opined by Dr. Postovoit in her residual functional capacity finding. Dkt. 24 at 21-22. However, Ms. Raney does not specify which limitations the ALJ failed to include. Dr. Postovoit opined that Ms. Raney could perform simple tasks reliably and many complex tasks, provided that they are previously understood, not time-pressured, and not heavily reliant on formal education; she could manage intermittent contact with the public and coworkers adequately, but she would have some difficulties when symptoms are worsened in dealing with others cordially on a consistent, more intensive basis; and she can perform productive tasks as noted within these limitations. Tr. 463. The ALJ included limitations to simple, repetitive tasks, limited interaction with supervisors and coworkers, and no work requiring coordination with others. Tr. 23. These limitations flow from Dr. Postovoit's opinion, even if they do not repeat them verbatim. It is the ALJ's job to interpret and synthesize the evidence, and that is exactly what the ALJ did in analyzing Dr. Postovoit's opinion. The Court finds no error in the ALJ's analysis of Dr. Postovoit's opinion and it should not be disturbed. However, this finding does not preclude the ALJ from reevaluating this opinion on remand in conjunction with her reevaluation of Dr. Brown's 2009 and 2010 opinions

---

[5] The Commissioner, somewhat strangely, characterizes this opinion as a "recommendation" that the ALJ need not include in her residual functional capacity decision. Dkt. 26 at 17. The case the Commissioner cites to, *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 691-92 (9th Cir. 2009), found that the ALJ did not err by excluding an observation made in a section of a report entitled "recommendations." But that is not the situation here. Rather, the reviewing doctor included the limitation in both the check-box portion of the physical residual functional capacity assessment form and the "additional comments" section. The Commissioner fails to explain how this restriction is a mere "recommendation" and not an opinion about Ms. Raney's functional capacity.

REPORT AND RECOMMENDATION - 17

and Ms. Raney's credibility.

### IV. CONCLUSION

Because the ALJ's residual functional capacity assessment was erroneous, it cannot support the ALJ's step-five finding that Ms. Raney was not disabled. Accordingly, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings. On remand, the ALJ should reevaluate Dr. Brown's 2009 and 2010 opinions, reevaluate Ms. Raney's credibility, and complete the remainder of the five-step sequential evaluation process as necessary.

A proposed order accompanies this Report and Recommendation. Objections, if any, to this Report and Recommendation must be filed and served no later than **July 11, 2012.** If no objections are filed, the matter will be ready for the Court's consideration on **July 13, 2012**. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed twelve pages. The failure to timely object may affect the right to appeal.

DATED this 27th day of June, 2012.

BRIAN A. TSUCHIDA
United States Magistrate Judge